UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

TOMMY NEAL ADAMS,                    )
                                     )
       Plaintiff,                    )
v.                                   )        No. 6:26-CV-32-REW
                                     )
COMMISSIONER OF SOCIAL               )        OPINION & ORDER
SECURITY,                            )
                                     )
       Defendant.                    )

*** *** *** ***

Plaintiff Tommy Neal Adams appeals the denial of his application for Disability Insurance Benefits ("DIB"). *See* DE 1 (Complaint).  Adams filed a motion for summary judgment, asserting that he is entitled judgment as a matter of law and seeking the same relief sought in his Complaint. *See* DE 13 (Motion for Summary Judgment).  The Commissioner responded in opposition, requesting affirmance of the underlying decision by the Administrative Law Judge ("ALJ"). *See* DE 15 (Commissioner's Brief).  The administrative record appears at DE 8 ("R." Administrative Transcript).  Having considered the pertinent record and applicable law, the Court **DENIES** Adams's appeal and inapt motion for summary judgment and **AFFIRMS** the Commissioner's denial of benefits.  ALJ Eastham properly applied the law, and his decision is supported by substantial evidence.

I.      **Background**

Adams applied for DIB on April 7, 2023, alleging disabling conditions beginning on August 22, 2022. *See* R. at 198-206.  In his application, he listed arthritis, stomach problems, bleeding ulcers, a hernia, and mental health issues as his disabling conditions. *See id.* at 246.  The Agency denied his claim initially, *see id.* at 125-29, and again on reconsideration, *see id.* at 139-

42, eventually leading to an administrative hearing before ALJ Jeffrey L. Eastham on April 11, 2024. *See id.* at 72-97. On May 30, 2024, Judge Eastham, in a lengthy opinion cataloguing the 2300-page record, concluded that Adams was not "disabled" within the meaning of the Social Security Act. *See id.* at 43-65. Adams requested review of Judge Eastham's decision. *See id.* at 8-14. On April 11, 2025, the Appeals Council notified Adams that it found no basis under its rules to review the ALJ decision and denied Adams's request for review, making the ALJ's decision the final agency decision. *See id.* at 1-7. This appeal ensued.

Judge Eastham denied Adams's claim after finding that he was not disabled and, thus, was not entitled to DIB. *See id.* at 46-65. Tracking the prescribed five-step evaluation sequence provided in 20 C.F.R. § 404.1520(a)(4), Judge Eastham acknowledged that Adams was not engaged in disqualifying substantial gainful activity since the alleged onset date of August 22, 2022. *See id.* at 49. He also found that Adams suffered from the following severe impairments: obesity; bilateral shoulder and hip osteoarthritis status post arthroscopic surgery and rotator cuff repair; slipped capital femoral epiphysis status post-surgery; migraine; chronic obstructive pulmonary disease; cubital tunnel syndrome; peripheral polyneuropathy; carpal tunnel syndrome; an anxiety disorder; a depressive disorder; an opioid use disorder; and an alcohol use disorder. *See id.* However, he next determined that those impairments (or a combination thereof) did not meet or medically equal the severity of a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 50-53. Having found that Adams's impairments did not meet or equal a listed impairment, Judge Eastham then assessed Adams and found he had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with certain

"postural, manipulative, environmental, and mental" limitations.[1]  *See id.* at 53-55.  Although Adams was deemed unable to perform any past relevant work, *see id.* at 62, Judge Eastham ultimately determined that "there are jobs that exist in significant numbers in the national economy that [Adams] can perform[,]" considering Adams's RFC, age, education, and work experience. *See id.* at 63.  As such, Judge Eastham concluded that Adams had not been under a disability from the alleged onset date through the date of his decision.  *See id.* at 64.

Adams requested review of Judge Eastham's decision by the Appeals Council, *see id.* at 8-14, but the Appeals Council denied his request.  *See id.* at 1-7.  Having exhausted his administrative remedies, Adams initiated this action.  *See* DE 1.  In his Complaint, Adams requests the Court to reverse Judge Eastham's decision and award him DIB or, alternatively, remand the matter to the Commissioner for a new hearing and the taking of additional evidence.  *See id.* at 2.  Adams also filed a motion for summary judgment, moving for like relief.  *See* DE 13.  Rule 56 does not pertain to an administrative review.[2]  The Commissioner responded in opposition on the appeal merits. *See* DE 15.  The matter is now ripe for review.

---

[1] Those limitations are as follows:  "he can frequently reach, handle, finger, and feel bilaterally with his upper extremities; he should never perform overhead reaching; he should never climb ladders, ropes, or scaffolding; he should never work at unprotected heights; he should only occasionally be exposed to vibrations or pulmonary irritants; his work environment should be no louder than a moderate noise level; he is limited simple tasks with simple instructions; but he can have up to frequent work-related contact with supervisors, coworkers, and the public."  R. at 53.

[2] Rule 56 has no place in a case involving review of an administrative record.  The governing statute provides the review standard, and a trial is never in play.  The Court is limited to reviewing the administrative record.  *See Vaught v. Fed. Deposit Ins. Corp.,* No. 3:16-cv-507, 2018 WL 5098531, at *6 (E.D. Tenn. Apr. 4, 2018) (quoting *N.C. Fisheries Ass'n, Inc. v. Gutierrez,* 518 F. Supp. 2d 62, 79 (D.D.C. 2007)). The Court must "'determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'"  *Id.* (quoting *Sierra Club v. Mainella,* 459 F. Supp. 2d 76, 90 (D.D.C. 2006)).  Social security review, under § 405(g), is about the existence vel non of substantial evidence, not a probing for genuinely disputed facts reserved to a factfinder. *See also Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1501 (10th Cir. 1992) (Kane, J., concurring) (unpublished table decision).

3

## II.    Legal Standard

An ALJ must conduct a five-step, sequential evaluation process when determining claims of disability.  First, the ALJ considers whether the claimant is engaged in "substantial gainful activity," generally defined as work that involves doing significant physical or mental activities (substantial) and is usually done for pay or profit, realized or not (gainful).  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1572(a)-(b).  Second, the ALJ determines whether any of the claimant's impairments are properly classified as "severe."  *See id.* §§ 404.1520(a)(4)(ii), (c).  Third, the ALJ analyzes whether the claimant's impairments, individually or in combination, meet or medically equal one of the impairments listed in Appendix 1 to Subpart P of Part 404.  *See id.* § 404.1520(a)(4)(iii).  Fourth, the ALJ determines the claimant's residual functional capacity and considers whether he can perform his past relevant work.  *See id.* § 404.1520(a)(4)(iv).[3]  Finally, the ALJ determines whether a significant number of jobs exist in the national economy that the claimant can yet perform, given his assessed residual functional capacity, age, education, and work experience.  *See id.* § 404.1520(a)(4)(v).  At this fifth step, the Commissioner bears the burden of production.  *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  If, at any step, the ALJ can conclusively determine that the claimant is or is not disabled, the analysis ends.  *See* 20 C.F.R. § 404.1520(a)(4).

When reviewing an ALJ's decision to deny DIB, a district court may only consider "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405-06 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  This is a limited and

---

[3] This inquiry focuses on the type of work the claimant previously held, not his exact position. *See Studaway v. Sec'y of Health & Hum. Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987).

4

record-bound inquiry. *See Wilson v. Comm'r of Soc. Sec.*, 783 F. App'x 489, 496 (6th Cir. 2019) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)).

An "ALJ's legal rulings, including his interpretation of relevant laws and regulations," are reviewed de novo. *Linden v. Comm'r of Soc. Sec.*, 131 F.4th 531, 534 (6th Cir. 2025) (citing *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018)). However, an ALJ's interpretations of language "contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law . . . are 'entitled to respect,' . . . but only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris Cnty.*, 120 S. Ct. 1655, 1662–63 (2000) (internal citations omitted) (quoting *Skidmore v. Swift & Co.*, 65 S. Ct. 161, 164 (1944)). While social security rulings are "agency rulings published under the authority of the Commissioner of Social Security," and are thus "binding on all components of the [SSA]," they are only persuasive to the Court. *Sullivan v. Zebley*, 110 S. Ct. 885, 891 n.9 (1990) (internal quotation omitted) (citing *Heckler v. Edwards*, 104 S. Ct. 1532, 1534, n.3 (1984)).[4]

In contrast, as to factual assessments, when there is at least "substantial evidence to support [an] ALJ's factual finding, that ruling is conclusive." *Linden*, 131 F.4th at 534 (citing 42 U.S.C. § 405(g)). This is not a high threshold. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of*

---

[4] *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024), expressly overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 104 S. Ct. 2778, 2781–83 (1984), which required courts to give deference to an agency's reasonable interpretations of ambiguous provisions contained in the statutes that the agency administers. However, *Loper Bright* did nothing to alter the basic principle of *Skidmore* deference that applies to an agency's reasonable interpretations of its own policy statements, agency manuals, and enforcement guidelines. *See Loper Bright Enters.*, 144 S. Ct. at 2259 (citing *Skidmore*, 65 S. Ct. at 164).

*Health & Hum. Servs.*, 667 F.2d 524, 535 (6th Cir. 1989)); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

Given the deferential substantial evidence standard, the Court will not try this case de novo, resolve conflicts in the evidence, or revisit questions of credibility. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Nor will the Court reverse the ALJ's determination merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court will affirm if substantial evidence supports the ALJ's decision, even if the Court might have decided the case differently if issuing a primary decision. *See Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

### III.   Analysis

#### A.  Adams properly exhausted his claim

A claimant may obtain judicial review of a decision on his application for DIB by filing "a civil action ... within [60] days after the mailing to him of notice of such decision ... in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). However, the claimant must first exhaust his administrative remedies by applying for an initial determination, seeking reconsideration, requesting a hearing before an ALJ, and asking for Appeals Council review. See 20 C.F.R. § 404.900(a)(1)–(5). Adams filed a timely action in the Eastern District of Kentucky, the judicial district in which he resides. *See* DE 1. Additionally, he has exhausted his administrative remedies by applying for an initial determination, seeking reconsideration, requesting a hearing before an ALJ, and asking for Appeals Council review. Having satisfied the procedural prerequisites to judicial review, and with no exhaustion issue

raised by SSA, the Court proceeds to the merits of Adams's appeal and motion for summary judgment.

### B. Judge Eastham's determination is supported by substantial evidence and reflects a proper consideration of the medical evidence and opinions

Adams challenges various aspects of Judge Eastham's analysis, primarily at the RFC stage, in arguing that the disability denial is not supported by substantial evidence. The Court addresses each argument in turn. Before doing so, however, the Court makes a brief point. Simply alleging that the claimant is "still suffering" from a particular condition or noting that the claimant was treated for a particular condition is not an actionable argument under the applicable standards set forth above. This is not de novo review. The analysis that follows addresses only the arguments, even perfunctory ones, that allege the ALJ applied incorrect legal standards or that the ALJ's findings lack substantial evidence. *See Blakley*, 581 F.3d at 405-06.

### i.      Mental Impairments

Adams, beginning on the back foot, argues that Judge Eastham failed to properly evaluate the "substantial medical records establishing his severe depression/anxiety." *See* DE 13-1 at 7. Adams states that Judge Eastham "did not find the Claimant suffered from a severe psychological impairment" despite his history of depression, anxiety, and bipolar disorder, as evidenced by his treatment at Whitesburg Behavioral Health Clinic and supported by "Dr." Anita McCullum's opinion. *See id.* at 7. An impairment or combination of impairments is severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520 (c); *see also id.* § 404.1522(b) (providing examples of basic work activities in both a physical and mental context). However, impairments are not severe "when the medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a

7

minimal effect on an individual's ability to work[.]"  SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985).

Adams is fundamentally mistaken.  Judge Eastham explicitly determined that Adams had the following psychological conditions constituting severe impairments: an anxiety disorder, a depressive disorder, an opioid use disorder, and an alcohol use disorder.  *See* R. at 49; 20 C.F.R. § 404.1520(a)(4)(ii).  True, Judge Eastham did not expressly include bipolar disorder as a severe impairment.  *See* DE 13-1 at 7-8.  However, such alleged failure was not prejudicial.  An ALJ, as Eastham noted, must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" in determining RFC.  *See* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).  "[S]o long as the ALJ considers both severe and non-severe impairments in later steps, the finding of non-severity at step two becomes harmless and 'legally irrelevant.'"  *Trent v. Saul*, No. 7:19-CV-109-CHB, 2021 WL 185233, at *3 (E.D. Ky. Jan. 19, 2021) (citing *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020)).

So, the ALJ did find severe mental health impairments.  Despite not finding his bipolar disorder severe at step two, in determining Adams's RFC, Judge Eastham expressly noted that at the initial determination stage in August 2023, Kay Barnfield, Psy.D., and Neil Armstrong, M.D., diagnosed Adams with, among other conditions, nonsevere depressive, bipolar and related disorders.  R. at 54.  Similarly, Judge Eastham noted that upon reconsideration in November 2023, Alicia Fedewa, Ph.D., and Jacqueline Fister, M.D., also diagnosed Adams with nonsevere depressive, bipolar and related disorders.  *See id.*  Later, Judge Eastham explicitly stated, "the claimant's psychological symptoms and their effect on their functioning have been considered together, instead of separately, regardless of the diagnostic label attached, subsumed into Listings 12.04 and 12.06."  *See id.* at 62.  Listing 12.04 includes depressive, bipolar and related disorders,

and Listing 12.06 includes anxiety and obsessive-compulsive disorders. 20 C.F.R. pt. 404, subpt. P, App. 1, Part A, §§ 12.04, 12.06. Therefore, because Judge Eastham found that Adams had severe impairments such that he proceeded to the next steps of the sequential process, and because Judge Eastham considered Adams's bipolar disorder (along with everything else) at the RFC determination stage, any alleged error in not finding Adams's bipolar disorder severe was harmless. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (finding that failure to deem an impairment severe is not reversible error if the claimant has another impairment deemed severe and the ALJ considers all impairments in determining RFC).

In sum, the Court disagrees with Adams's cursory argument that Judge Eastham did not adequately evaluate the medical evidence regarding his psychological disorders. Judge Eastham properly analyzed and found somewhat persuasive the consultative examination prepared by John H. Cecil, Ph.D.[5], who conducted a clinical interview, review of medical and administrative records, and a mental status examination. R. at 58-59. Judge Eastham compared Dr. Cecil's opinion with the contemporaneous consultative examination, and he compared Dr. Cecil's findings with Dr. Barnfield's, Dr. Fedewa's, and Nurse Practitioner McCullum's opinions, satisfying the supportability and consistency factors of § 404.1520c. *Id.* Judge Eastham proceeded to appropriately discuss NP McCullum's medical assessment, ultimately finding that McCullum's check box analysis largely was "unexplained and unsupported" and thus less persuasive. *Id.* Judge Eastham also discussed the administrative findings of fact made by the State agency medical consultants, again comparing their opinions to the medical evidence. *Id.* at 60. Ultimately, Judge Eastham found that due to Adams's severe anxiety disorder and depressive order, Adams has the following degree of limitation in the four broad areas of mental functioning set out in Appendix 1:

---

[5] Judge Eastham perhaps mistakenly referred to this as Dr. Emily E. Skaggs's examination. Dr. Cecil is employed by Skaggs Consulting, PLLC. Both are signatories on the evaluation. R. at 1601.

- Consistent with having moderate limitation in understanding, remembering, or applying information, the claimant is limited to Simple Instructions.
- Consistent with having moderate limitation in interacting with others, the claimant is limited to work involving Simple Tasks.
- Consistent with having moderate limitation with regard to concentrating, persisting, or maintaining pace, the claimant can have frequent work-related contact with supervisors, coworkers, and the public.
- As for adapting or managing oneself, the claimant has experienced a mild limitation.

*Id.* at 62. Two and three may have included transposed findings, though that is of no effect given the moderate limitations across both categories. Judge Eastham accommodated Adams's mental impairments "with limitations on type [of] instructions, task complexity, and social interaction." *Id.* Based on the foregoing discussion, the Court finds that Judge Eastham thoroughly reviewed and analyzed the pertinent evidence, resulting in findings supported by substantial evidence. To reach them, he mined and sorted the full array of opinions, with due reference to background medical history, and surely reached a conclusion reasonable on the record. This was all in a case seasoned by the subjective nature of certain symptomology, under the § 404.1529 rubric.

Notably, Adams does not make any specific argument about how Judge Eastham's analysis was inadequate with respect to mental impairments. For example, Adams does not detail how his allegedly overlooked bipolar condition would have changed the RFC or associated limitations. Instead, he vaguely alludes to his history of depression, anxiety, and bipolar disorders (which Judge Eastham expressly considered) and states that disregarding such history was improper. For example, Adams writes:

> The Claimant further bears the burden of proof that he does in fact suffer from a serious impairment in regard to his anxiety disorder, depressive disorder and bipolar disorder which is not noted by the ALJ to have been a severe impairment. The Claimant was diagnosed with bipolar disorder by his treating psychologist at MCHC (H.T. 1022-1036). The Claimant has continued to suffer with and treat for anxiety and depression at MCHC. (H.T. 1156) It is the Claimant's position that the

10

ALJ failed to properly address his psychological conditions in determining that he would not have serious limitations in those regards.

DE 13-1 at 11. Generalized allegations that Adams was diagnosed with mental health disorders and continued to suffer with them throughout the disability period simply do not suffice to demonstrate that Judge Eastham's opinion is not based on substantial evidence. On the contrary, the Court's review of Judge Eastham's opinion reflects a fulsome audit of and appropriate reliance on the pertinent evidence in shaping his determination. Adams does not identify a specific finding of Judge Eastham that is not supported by substantial evidence, and the Court independently discerns none. Notably, Eastham carefully tested the review by Cecil against the check-box reporting of treater McCullum. He derived an RFC that carefully adhered to the consistent and supported aspects from each. Even McCullum viewed Adams as having "fair" ability across nearly all of the pertinent interactive dimensions measured and "fair" on simple (indeed complex) execution of instructions. *See* R. at 1975-76 (with "fair" defined as "satisfactory" ability). Eastham's derivation rested on the persuasive aspects of the opinion proof, and he backed each assignment with scrutiny that meets the § 404.1520c requirements, in the Court's objective view.

### ii.    Physical Impairments

Adams also challenges Judge Eastham's evaluation of the evidence regarding certain physical symptoms. First, Adams contends that Judge Eastham's decision does not adequately address Adams's back pain. *See* DE 13-1 at 8. Adams adduces his "treating records" (with no accompanying citation) and an MRI conducted at Whitesburg ARH, which detected a tiny partial articular surface tear involving the anterior fibers of the distal supraspinatus with mild tendinosis and minimal subacromial/subdeltoid bursitis. *See id.* (citing R. at 1603). Adams goes no further to develop this argument. He does not explain how Judge Eastham's determination, including his finding of severe peripheral polyneuropathy at step two and his RFC designation of light work

11

with postural limitations, is not supported by substantial evidence given this condition.  Adams does not identify or advocate for his true RFC had Judge Eastham correctly considered the cited evidence nor the additional limitations Adams is subjected to that Judge Eastham did not factor. In short, the argument lacks the necessary depth for meaningful judicial review.

Even so, the Court finds that Judge Eastham adequately evaluated Adams's back pain. Judge Eastham noted that Adams testified at his hearing to experiencing lower back pain.  *See* R. at 54.  Further, he discussed Adams's medical records from the Pikeville Neurology Clinic completed by Dr. Sujata R. Gutti.  *See id.* at 55-56, 2226.  Judge Eastham noted Adams's report to Dr. Gutti of his cervical and lumbar pain associated with numbness and tingling sensations migrating to his lower extremities.  He noted responsiveness to treatment.  He gave due consideration to Dr. Gutti's assessment that Adams had low back pain with right leg radicular symptoms and sciatic nerve pain.  *See id.* at 56.  Judge Eastham repeatedly acknowledged Adams's musculoskeletal and neurological impairments throughout his decision.  *See id.* at 55, 57, 62.  Thus, Adams's back pain was factored into the RFC determination of light work with postural limitations, and Adams has failed to show that Judge Eastham's decision is not supported by substantial evidence.  And Eastham's careful and detailed assessment of experts, from the conclusory Blackburn to the largely persuasive Fister, shows care and granularity.  *See, e.g.*, R. 61.

Adams also suggests that Judge Eastham failed to address or find that Adams suffered from coal workers pneumoconiosis, citing Dr. Matthew Vuskovich's x-ray report and Dr. Mahmood Alam's evaluation as evidence in support.  *See* DE 13-1 at 8.  However, in arriving at the RFC of light work with various limitations, Judge Eastham explicitly noted Dr. Alam's workers'

12

compensation evaluation.[6]  *See* R. at 60.  In that assessment, Dr. Alam stated that Adams "has simple clinical CWP, no legal CWP. [Adams's] chest xray reading is not complicated CWP so cannot get disability on radiological ground.  [Adams] is clinically asymptomatic so cannot get legal CWP.  [Adams's] pulmonary work up is above disability."  *See id.* at 2205.  Judge Eastham directly acknowledged several of Dr. Alam's findings, including that Adams could not get disability on radiological grounds and that his pulmonary "work up" was above disability.  *See id.* at 60.  Therefore, to say Judge Eastham failed to address Adams's coal workers pneumoconiosis is incorrect.  Further, Judge Eastham accounts for Adams's CWP in his final RFC determination: "Due to his history of respiratory impairments, he should avoid exposure to atmospheric conditions and/or respiratory irritants."  *See id.* at 62.  Thus, Judge Eastham's decision with respect to this condition was supported by substantial evidence, including Dr. Alam's evaluation.  Adams does not explain how a different approach would yield a different result.

Adams, in one sentence, argues that Judge Eastham failed to address that Adams suffered from a work-related hearing loss, citing an audiology report conducted by Southeast Kentucky Audiology on May 9, 2024.  *See* DE 13-1 at 8.  This report was prepared by Liz Rogers, Au.D., and indicates that "Mr. Adams has significant hearing loss in the left ear" but that he would "benefit from amplification in the left ear to help him hear more clearly in his listening environments."  *See* R. at 40.  However, this report was not in the administrative record for Judge Eastham's consideration, as it was submitted to the Appeals Council following Judge Eastham's decision.  *See id.*  The Sixth Circuit has "repeatedly refused to consider evidence submitted after the ALJ issued his decision when reviewing that decision for substantial evidence under 42 U.S.C. §

---

[6] Dr. Vuskovich's x-ray report was not in the administrative record for Judge Eastham's consideration; it was submitted to the Appeals Council after Judge Eastham released his decision.  *See* R. at 34-37.  For the same reasons discussed below regarding evidence of Adams's work-related hearing loss, this report is not considered.

13

405(g)." *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 472-73 (6th Cir. 2014) (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.2001); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir.1996)).

However, additional evidence may be considered, for the purpose of a remand under sentence six of § 405(g),  if Adams can show that the evidence is "new and material, and that there was good cause for not presenting it in the prior proceeding." *Foster*, 279 F.3d at 357 (quoting *Cline*, 96 F.3d at 148); *see also* 42 U.S.C. § 405(g) ("The court may…at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]").  Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster*, 279 F.3d at 357 (quoting *Sullivan v. Finkelstein*, 110 S. Ct. 2658, 2664 (1990)).  "[E]vidence is 'material' only if there is a 'reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)).  "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)).

Adams, who simply cites the proof, does not argue that any of these requirements are satisfied.  He bears the burden of showing remand is warranted, so consideration of the audiology report at this stage is not proper.  The Court separately writes on materiality.  Judge Eastham's RFC determination of light work included the limitation that "his work environment should be no louder than a moderate noise level." R. at 53.  Thus, consideration of Adams's hearing loss by

Judge Eastham would not, in the Court's view, have resulted in a different RFC determination, as the current one sufficiently accounts for this condition, especially considering the possibility of resolution through hearing aids. *Id.* Adams cites no other evidence relating to his hearing loss that Judge Eastham disregarded. Therefore, Adams has not shown that Judge Eastham's decision is not supported by substantial evidence. Fundamentally, the failure to show good cause takes the matter off the table.

### iii.    Discussing and Weighing Medical Opinions

Finally, Adams argues that Judge Eastham should not have "disregarded" Dr. Van Breeding and Nurse Practitioner[7] Anita McCullum's opinions, and that he also erred by not adopting them. *See* DE 13-1 at 8. In support of this argument, Adams cites *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007). However, *Bowen*, a 2007 case, applied 20 C.F.R. § 404.1527, the rule for evaluating opinion evidence for claims filed before March 27, 2017. This rule was changed by 20 C.F.R. § 404.1520c. For claims filed on or after March 27, 2017, the case here, ALJs do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Rather, ALJs consider and articulate the persuasiveness of each opinion individually, relying on considerations like supportability, consistency, relationship with the claimant, specialization, and other factors "that tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c)(1)–(5).

Judge Eastham did not disregard either NP McCullum or Dr. Van Breeding's opinion as Adams suggests. Judge Eastham assessed Ms. McCullum's Medical Assessment of Ability to Do Work-Related Activities (Mental) and restated her opinions regarding Adams's mental limitations.

---

[7] Adams, on multiple occasions, mistakenly refers to McCullum as a doctor. *See* DE 13-1 at 8, 9.

*See* R. at 59, 1975-76.  He noted that Ms. McCullum had a treating relationship with Adams.  *See id.*  He acknowledged consistencies between Ms. McCullum's and Dr. Cecil's opinions, such as Adams's ability to tolerate stress and pressure of day-to-day employment and his ability to sustain attention and concentration towards the performance of simple, repetitive tasks.  *See id.* at 59.  He ultimately determined that her opinion is generally inconsistent with her own medical evidence and that her check-box analysis is of slight assistance because there was no supporting analysis or explanation.  *See id.* at 59-60.  Despite that, he recognized some value and persuasion in McCullum's views, e.g., citing post-evaluation continuing depression and anxiety, R. at 59 (citing to R. at 2231) and incorporated that influence, to the degree stated, in the RFC formulation.

Similarly, Judge Eastham discussed Dr. Van Breeding's Medical Assessment of Ability to Do Work-Related Activities (Physical) and noted his opinion regarding Adams's ability to lift and/or carry items, his limitations in standing, walking, and sitting, and various other physical measures.  *See id.* at 60-61, 2153-55.  Ultimately, Judge Eastham found Dr. Breeding's opinion of little persuasive value because his opinion also derived from a check-box document with no analysis or explanation.  *See id.* at 60-61.  Clearly then, Judge Eastham did not ignore or disregard either Dr. Van Breeding's or Ms. McCullum's opinion; he just weighed them.

Judge Eastham reasonably found neither check-box opinion persuasive.  Neither provider detailed their functional analysis in any manner.  After each section in Dr. Breeding's assessment, the form provided a space to detail "the medical findings that support these assessments," yet he listed none.  *See* R. at 2153.  Ms. McCullum also had the opportunity to elaborate on her findings yet eschewed it.  *See id.* at 1975-76.  The Court cannot say that finding these opinions unpersuasive, in the detailed and nuanced manner Eastham did, was in error.

Lastly, Adams argues that Judge Eastham "failed to articulate all the medical evidence and medical findings in this case record including the explanation of how the ALJ considered the factors of supportability and consistency." DE 13-1 at 9. Adams does not further develop this one-sentence argument. In *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir. 2006), the Sixth Circuit "declined to formulate arguments" on the claimant's behalf where he "made little effort to develop" his argument. Instead, the Court "limit[s] [its] consideration to the particular points" that Adams makes on appeal. *Id.* Indeed, courts "routinely decline to consider perfunctory arguments of this sort." *Brenay v. Schartow*, 709 F. App'x 331, 336-37 (6th Cir. 2017). District courts in this circuit have treated similarly bare arguments as waived. *See, e.g.*, *Joseph P. v. Comm'r of Soc. Sec.*, No. 1:25-cv-10744, 2026 WL 281170, at *9-10 (E.D. Mich. Feb. 3, 2026); *Shepherd v. Kijakazi*, No. 6:20-CV-137-JMH, 2021 WL 3645088, at *4 (E.D. Ky. Aug. 17, 2021). Accordingly, Adams's conclusive yet unsupported assertion that Judge Eastham failed to satisfy his articulation requirement under 20 C.F.R § 404.1520c(b) is waived. And in any event, as noted, Judge Eastham confronted and distilled a 2300-page record, producing an extensive, 20-page opinion.[8] He went expert-by-expert in arraying the proof. The Court finds the articulation standard well met.

### C. Denial of Summary Judgment

Adams labelled his appellate brief a motion for summary judgment. This case involves an administrative appeal under standards governed by statutory law and cabined by an extant administrative record. As earlier explained, Rule 56 concepts have no place, because no trial

---

[8] Of course, Eastham saw Adams testify. Adams described extreme limitations, including the requirement that he lie down for half of each day and that he could lift only 10 pounds, stand for 10 minutes, and sit for 10 minutes. R. at 82, 85. This contrasted with, e.g., his reported work, during the period of claimed disability, cleaning out and vacuuming cars. R. at 77; 49 & 58 (notes regarding this by the ALJ). Judge Eastham reflected the full record in finding the RFC the proof substantiated.

would ever ensue in a case of this type    Therefore, Adams's motion for summary judgment is denied.  Indeed, in this administrative appeal, applying the correct review standard, the Court affirms the Agency's determination on the merits.

### IV.    Conclusion

The Court's conclusion, based on the administrative record, is that Judge Eastham properly applied the applicable law and rendered a decision supported by substantial evidence.  Judge Eastham carefully considered the entire record in reaching his decision.  *See* R. at 48, 53.  He evaluated all pertinent treatment notes and opinions in the record.  Judge Eastham evaluated the several medical opinions, assessed Adams's credibility, and arrived at an RFC that incorporated Adams's credible limitations.  He then appropriately relied on the testimony of a vocational expert in finding Adams capable of making an adjustment to other available work.  Hence, Judge Eastham's conclusion that Adams was not under a disability during the claimed period is supported by substantial evidence.

Accordingly, it is **ORDERED** as follows:

1.  The Court **DENIES** Adams's appeal (DE 1) and inapt motion for summary judgment (DE 13).

2.  The Court **AFFIRMS** the Agency's decision.

3.  The Clerk shall **STRIKE** this matter from the Court's active docket.

4.  The Court will enter a separate Judgment.

This the 23rd day of July, 2026.



Signed By:

__Robert E. Wier__

**United States District Judge**

18